UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CROSSLAYER COMMUNICATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>EATON CORPORATION,<br><br>Defendant. | Case No.: 1:25-cv-630<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

1. Crosslayer Communications LLC ("Crosslayer") hereby brings this action alleging that Eaton Corporation ("Eaton") infringes United States Patent Nos. 9,785,129 (the "'129 Patent"); 10,007,243 (the "'243 Patent"); 8,872,667 (the "'667 Patent"); 9,923,416 (the "'416 Patent"); and 11,342,790 (the "'790 Patent") (collectively, the "Asserted Patents") in violation of the patent laws of the United States of America, 35 U.S.C. § 1 et seq.

## INTRODUCTION

2. The Asserted Patents disclose and claim innovative smart electrical grid technologies that are now widely being used to optimize electricity distribution across the country. Electricity suppliers must often monitor their electrical grids for downed power lines and other faults to mitigate the disruptions of such problems to the electricity supply. As electrical grids have become more complex, with distributed generation from solar, wind, etc. becoming widespread, it has become increasingly challenging and important to manage these grid networks to prevent and mitigate outages.

3. The '129, '243, and '667 Asserted Patents improve grid performance by not only providing solutions to reactively isolate faults after they occur, but also by proactively preventing

faults by predicting where they are likely to occur and taking corrective actions. For example, these Asserted Patents disclose the use of distributed monitoring devices that can measure and report voltage, current, real power, reactive power, and/or or the statuses of other electrical devices such as transformers or circuit breakers. When such reported measurements are abnormal, e.g., exceeding a threshold, the network automatically requests a fault isolation operation to isolate the predicted electrical fault. Such proactive operations improve the reliability of the electrical grid and can prevent damage to grid components.

4. The '416 and '790 Asserted Patents disclose the creation and use of dynamic microgrids to minimize the number of customers affected by distribution grid disruptions. For example, a utility operator can control switches to create a self-sufficient island that is electrically isolated from the rest of a distribution grid and that includes sufficient energy resources to satisfy power demanded by consuming devices within the micro-grid. An area of a distribution grid may include one or more residences, offices, facilities, and/or devices that consume electrical power and energy resources that provide electrical power (e.g., batteries, generators, solar cells, wind turbines, etc.). The utility operator thereby enhances the reliability and robustness of the service provided to its islanded customers and can further maximize the use of local energy resources to satisfy the local energy demand, thereby reducing potential environmental negative impacts of power generation (e.g., soot from coal-fired power plants).

5. Eaton provides a series of hardware and software products that infringe the Asserted Patents and are used by its customers to infringe the Asserted Patents. For example, Eaton infringes the '129, '243, and '667 Asserted Patents and induces its customers to infringe these patents by promoting and providing its "[d]istributed automation [] integrated solution . . . [which] integrates real-time data to detect distribution system disturbances and automatically

reconfigure the system, significantly improving reliability while reducing the number of customers affected" (collectively, the "Distributed Automation Accused Products"). (*Distribution Automation: Fundamentals of Distribution Automation*, EATON, https://www.eaton.com/ca/en-gb/products/utility-grid-solutions/grid-automation-system-solutions/distribution-automation-fundamentals.html.)  "Examples of distribution automation tools include [without limitation] FLISR software, Volt/VAR management software, optical sensors, smart sensors and smart sensor software, automatic source transfer controls, capacitor bank controls, recloser controls, voltage regulator controls and automated switchgear controls." (*Id.*)

6. Eaton also infringes the '416 and '790 Asserted Patents and induces its customers to infringe these patents by promoting and providing its Microgrid Energy Systems, including, e.g., it's Xpert Microgrid Controllers, Pow-R-Line Xpert panelboards & switchboards, battery energy storage systems, XLM supercapacitor modules and cabinets, solar photovoltaic systems, smart inverters and load control devices, etc. (collectively, the "Microgrid Accused Products").

## THE PARTIES

7. Crosslayer is a company formed under the laws of Texas with an address at 2701 W. 15th Street, Suite D, PMB #2005, Plano, TX 75075.

8. On information and belief, Eaton is an Ohio corporation with a principal place of business at 1000 Eaton Boulevard, Cleveland, OH 44122.  Eaton has a registered agent at The Corporation Trust Company, 1209 Orange St., Wilmington, DE, 19801.

## JURISDICTION AND VENUE

9. This is a civil action for patent infringement arising under the patent laws of the United States as set forth in 35 U.S.C. §§ 271, *et seq*.

10. This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Eaton because Eaton has purposefully availed itself to the privilege of conducting activities within the State of Texas. Eaton has regular and established places of business within the state of Texas and has committed acts of patent infringement within the state of Texas. For example, on information and belief, Eaton maintains an office at 4616 Howard Ln., Suite 500, Austin, TX 78728. Eaton further operates a large manufacturing facility in El Paso, Texas. (*Eaton Invests $150 Million to Increase Manufacturing of Vital Electrical Infrastructure for North American Businesses and Communities*, EATON, https://www.eaton.com/us/en-us/company/news-insights/news-releases/2023/eaton-invests-150-million-to-increase-manufacturing.html.) Eaton also operates a training facility in Houston, Texas. (*Eaton Experience Centers[:] Locations*, EATON, https://www.eaton.com/us/en-us/markets/eaton-experience-centers/locations.html.) Eaton sells the Accused Products throughout the United States, including within Texas.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because Eaton has a regular and established place of business in this District, for example its El Paso manufacturing facility, and has committed acts of infringement within this District.

## THE ASSERTED PATENTS

13. The '129 Patent, which is entitled "Fault Isolation and Service Restoration in an Electric Grid," was duly and legally issued to inventors Gopal K. Bhageria, Don T. Mak, Kevin M. Monagle, Sri Ramanathan, Jean-Gael F. Reboul, Matthew A. Terry, and Matthew B. Trevathan, and assignee International Business Machines Corporation, on October 10, 2017. A true copy of the '129 Patent is attached hereto as **Exhibit A**.

14. Crosslayer is the current owner of the entire right, title, and interest in and to the '129 Patent, which is presumed valid under 35 U.S.C. § 282.

15. The '243 Patent, which is entitled "Fault Isolation and Service Restoration in an Electric Grid," was duly and legally issued to inventors Gopal K. Bhageria, Don T. Mak, Kevin M. Monagle, Sri Ramanathan, Jean-Gael F. Reboul, Matthew A. Terry, and Matthew B. Trevathan, and assignee International Business Machines Corporation, on June 26, 2018. A true copy of the '243 Patent is attached hereto as **Exhibit B**.

16. Crosslayer is the current owner of the entire right, title, and interest in and to the '243 Patent, which is presumed valid under 35 U.S.C. § 282.

17. The '667 Patent, which is entitled "Fault Isolation and Service Restoration in an Electric Grid," was duly and legally issued to inventors Gopal K. Bhageria, Don T. Mak, Kevin M. Monagle, Sri Ramanathan, Jean-Gael F. Reboul, Matthew A. Terry, and Matthew B. Trevathan on October 28, 2014. A true copy of the '667 Patent is attached hereto as **Exhibit C**.

18. Crosslayer is the current owner of the entire right, title, and interest in and to the '667 Patent, which is presumed valid under 35 U.S.C. § 282.

19. The '416 Patent, which is entitled "Configuring, Optimizing, and Managing Micro-Grids," was duly and legally issued to inventors Gopal K. Bhageria, Jean-Gael F. Reboul, and Matthew B. Trevathan, and assignee International Business Machines Corporation, on March 20, 2018. A true copy of the '416 Patent is attached hereto as **Exhibit D**.

20. Crosslayer is the current owner of the entire right, title, and interest in and to the '416 Patent, which is presumed valid under 35 U.S.C. § 282.

21. The '790 Patent, which is entitled "Configuring, Optimizing, and Managing Micro-Grids," was duly and legally issued to inventors Gopal K. Bhageria, Jean-Gael F. Reboul,

and Matthew B. Trevathan on May 24, 2022.  A true copy of the '790 Patent is attached hereto as **Exhibit E**.

22. Crosslayer is the current owner of the entire right, title, and interest in and to the '790 Patent, which is presumed valid under 35 U.S.C. § 282.

### COUNT I:  PATENT INFRINGEMENT OF THE '129 PATENT

23. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

24. Eaton has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '129 Patent by making, using, selling, offering to sell, and/or importing the Distributed Automation Accused Products within the United States.

25. A detailed infringement analysis demonstrating how Eaton practices each and every limitation of claim 1 of the '129 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit F**.

26. As a result of Eaton's direct infringement of the '129 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

### COUNT II:  INDIRECT INFRINGEMENT OF THE '129 PATENT

27. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

28. Eaton actively induces infringement of the '129 Patent by its customers to whom it provides the Distributed Automation Accused Products under 35 U.S.C. § 271(b).  *See* **Exhibit F**.  By implementing Eaton's distributed automation integrated solutions within their distribution networks, Eaton's customers use the invention and put it into service, e.g., control the system as

a whole and obtain benefit from it.  Indeed, by using Eaton's distributed automation integrated solutions, Eaton's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting grid reliability and resilience.

29. Eaton has knowledge of the '129 Patent, of its infringement of the '129 Patent, and of its customers' infringement of the '129 Patent at least as of the service and filing of this Complaint.  **Exhibit F** provides actual notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Distributed Automation Accused Products, as well as its customers' use of those products, infringes the '129 Patent.  **Exhibit F** provides further notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Distributed Automation Accused Products, as well as its customers' use of those products, infringes the '129 Patent.

30. Eaton's continued sale, testing, support, instruction, installation, and promotion of the Distributed Automation Accused Products to and for customers and prospective customers constitutes active encouragement and instruction to infringe the '129 Patent.  For example, Eaton's publication of its "Distribution Automation:  Fundamentals of Distribution Automation" website (*Distribution Automation:  Fundamentals of Distribution Automation*, EATON, https://www.eaton.com/ca/en-gb/products/utility-grid-solutions/grid-automation-system-solutions/distribution-automation-fundamentals.html) and related websites intentionally instruct and encourage customers to use the Distributed Automation Accused Products in infringing manners.  *See* **Exhibit F**.

31. Upon information and belief, Eaton has many end user customers who use the Distributed Automation Accused Products in a manner that directly infringes the '129 Patent.  As a result of Eaton's infringement and its customers' infringement of the '129 Patent, Crosslayer

7

has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

## COUNT III: DIRECT INFRINGEMENT OF THE '243 PATENT

32. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

33. Eaton has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '243 Patent by making, using, selling, offering to sell, and/or importing the Distributed Automation Accused Products within the United States.

34. A detailed infringement analysis demonstrating how Eaton practices each and every limitation of claim 1 of the '243 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit G**.

35. As a result of Eaton's direct infringement of the '243 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

## COUNT IV: INDIRECT INFRINGEMENT OF THE '243 PATENT

36. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

37. Eaton actively induces infringement of the '243 Patent by its customers to whom it provides the Distributed Automation Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit G**. By implementing Eaton's distributed automation integrated solutions within their distribution networks, Eaton's customers use the invention and put it into service, e.g., control the system as a whole and obtain benefit from it. Indeed, by using Eaton's distributed automation integrated

solutions, Eaton's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting grid reliability and resilience.

38. Eaton has knowledge of the '243 Patent, of its infringement of the '243 Patent, and of its customers' infringement of the '243 Patent at least as of the service and filing of this Complaint. **Exhibit G** provides actual notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Distributed Automation Accused Products, as well as its customers' use of those products, infringes the '243 Patent. **Exhibit G** provides further notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Distributed Automation Accused Products, as well as its customers' use of those products, infringes the '243 Patent.

39. Eaton's continued sale, testing, support, instruction, installation, and promotion of the Distributed Automation Accused Products to and for customers and prospective customers constitutes active encouragement and instruction to infringe the '243 Patent. For example, Eaton's publication of its "Distribution Automation: Fundamentals of Distribution Automation" website (*Distribution Automation: Fundamentals of Distribution Automation*, EATON, https://www.eaton.com/ca/en-gb/products/utility-grid-solutions/grid-automation-system-solutions/distribution-automation-fundamentals.html) and related websites intentionally instruct and encourage customers to use the Distributed Automation Accused Products in infringing manners. *See* **Exhibit G**.

40. Upon information and belief, Eaton has many end user customers who use the Distributed Automation Accused Products in a manner that directly infringes the '243 Patent. As a result of Eaton's infringement and its customers' infringement of the '243 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

## COUNT V: DIRECT INFRINGEMENT OF THE '667 PATENT

41. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

42. Eaton has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '667 Patent by making, using, selling, offering to sell, and/or importing the Distributed Automation Accused Products within the United States.

43. A detailed infringement analysis demonstrating how Eaton practices each and every limitation of claim 1 of the '667 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit H**.

44. As a result of Eaton's direct infringement of the '667 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

## COUNT VI: INDIRECT INFRINGEMENT OF THE '667 PATENT

45. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

46. Eaton actively induces infringement of the '667 Patent by its customers to whom it provides the Distributed Automation Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit H**. By implementing Eaton's distributed automation integrated solutions within their distribution networks, Eaton's customers use the invention and put it into service, e.g., control the system as a whole and obtain benefit from it. Indeed, by using Eaton's distributed automation integrated solutions, Eaton's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting grid reliability and resilience.

47. Eaton has knowledge of the '667 Patent, of its infringement of the '667 Patent, and of its customers' infringement of the '667 Patent at least as of the service and filing of this Complaint. **Exhibit H** provides actual notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Distributed Automation Accused Products, as well as its customers' use of those products, infringes the '667 Patent. **Exhibit H** provides further notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Distributed Automation Accused Products, as well as its customers' use of those products, infringes the '667 Patent.

48. Eaton's continued sale, testing, support, instruction, installation, and promotion of the Distributed Automation Accused Products to and for customers and prospective customers constitutes active encouragement and instruction to infringe the '667 Patent. For example, Eaton's publication of its "Distribution Automation: Fundamentals of Distribution Automation" website (*Distribution Automation: Fundamentals of Distribution Automation*, EATON, https://www.eaton.com/ca/en-gb/products/utility-grid-solutions/grid-automation-system-solutions/distribution-automation-fundamentals.html) and related websites intentionally instruct and encourage customers to use the Distributed Automation Accused Products in infringing manners. *See* **Exhibit H**.

49. Upon information and belief, Eaton has many end user customers who use the Distributed Automation Accused Products in a manner that directly infringes the '667 Patent. As a result of Eaton's infringement and its customers' infringement of the '667 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

### COUNT VII: DIRECT INFRINGEMENT OF THE '416 PATENT

50. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

51. Eaton has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '416 Patent by making, using, selling, offering to sell, and/or importing the Microgrid Accused Products within the United States.

52. A detailed infringement analysis demonstrating how Eaton practices each and every limitation of claim 1 of the '416 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit I**.

53. As a result of Eaton's direct infringement of the '416 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

## COUNT VIII: INDIRECT INFRINGEMENT OF THE '416 PATENT

54. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

55. Eaton actively induces infringement of the '416 Patent by its customers to whom it provides the Microgrid Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit I**. By implementing Eaton's Microgrid Energy Systems, Eaton's customers use the invention and put it into service, e.g., control the system as a whole and obtain benefit from it. Indeed, by using Eaton's Microgrid Energy Systems, Eaton's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting electrical system reliability and/or versatility.

56. Eaton has knowledge of the '416 Patent, of its infringement of the '416 Patent, and of its customers' infringement of the '416 Patent at least as of the service and filing of this Complaint. **Exhibit I** provides actual notice to Eaton that its making, use, sale, offer for sale,

and/or importation of the Microgrid Accused Products, as well as its customers' use of those products, infringes the '416 Patent.  **Exhibit I** provides further notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Microgrid Accused Products, as well as its customers' use of those products, infringes the '416 Patent.

57. Eaton's continued sale, testing, support, instruction, installation, and promotion of the Microgrid Accused Products to and for customers and prospective customers constitutes active encouragement and instruction to infringe the '416 Patent.  For example, Eaton's publication of its "Microgrid Energy Systems" website (*Microgrid Energy Systems*, EATON, https://www.eaton.com/us/en-us/markets/innovation-stories/microgrid-energy-systems.html) and related websites intentionally instruct and encourage customers to use the Microgrid Accused Products in infringing manners.  *See* **Exhibit I**.

58. Upon information and belief, Eaton has many end user customers who use the Microgrid Accused Products in a manner that directly infringes the '416 Patent.  As a result of Eaton's infringement and its customers' infringement of the '416 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

## COUNT IX:  DIRECT INFRINGEMENT OF THE '790 PATENT

59. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

60. Eaton has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '790 Patent by making, using, selling, offering to sell, and/or importing the Microgrid Accused Products within the United States.

61. A detailed infringement analysis demonstrating how Eaton practices each and every limitation of claim 1 of the '790 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit J**.

62. As a result of Eaton's direct infringement of the '790 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

### COUNT X: INDIRECT INFRINGEMENT OF THE '790 PATENT

63. Crosslayer incorporates by reference each of the above paragraphs as if fully restated herein.

64. Eaton actively induces infringement of the '790 Patent by its customers to whom it provides the Microgrid Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit J**. By implementing Eaton's Microgrid Energy Systems, Eaton's customers use the invention and put it into service, e.g., control the system as a whole and obtain benefit from it. Indeed, by using Eaton's Microgrid Energy Systems, Eaton's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting electrical system reliability and/or versatility.

65. Eaton has knowledge of the '790 Patent, of its infringement of the '790 Patent, and of its customers' infringement of the '790 Patent at least as of the service and filing of this Complaint. **Exhibit J** provides actual notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Microgrid Accused Products, as well as its customers' use of those products, infringes the '790 Patent. **Exhibit J** provides further notice to Eaton that its making, use, sale, offer for sale, and/or importation of the Microgrid Accused Products, as well as its customers' use of those products, infringes the '790 Patent.

66.     Eaton's continued sale, testing, support, instruction, installation, and promotion of the Microgrid Accused Products to and for customers and prospective customers constitutes active encouragement and instruction to infringe the '790 Patent.  For example, Eaton's publication of its "Microgrid Energy Systems" website (*Microgrid Energy Systems*, EATON, https://www.eaton.com/us/en-us/markets/innovation-stories/microgrid-energy-systems.html) and related websites intentionally instruct and encourage customers to use the Microgrid Accused Products in infringing manners.  *See* **Exhibit J**.

67.     Upon information and belief, Eaton has many end user customers who use the Microgrid Accused Products in a manner that directly infringes the '790 Patent.  As a result of Eaton's infringement and its customers' infringement of the '790 Patent, Crosslayer has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Eaton's infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Crosslayer respectfully requests the following relief:

A.   A judgment in favor of Crosslayer that Eaton has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

B.   An award of damages resulting from Eaton's acts of infringement in accordance with 35 U.S.C. § 284;

C.   That this Court order an accounting of damages incurred by Crosslayer from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment;

D.   That this Court award pre- and post-judgment interest on such damages to Crosslayer;

E.  A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Crosslayer reasonable attorneys' fees against Eaton.

F.  Any and all other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Crosslayer respectfully requests a trial by jury on all issues triable thereby.

DATED this 29th day of April, 2025.

RESPECTFULLY SUBMITTED,

By:  */s/ David K. Ludwig*
David K. Ludwig
Georgia Bar No. 616971 (*Admitted to the Western District of Texas*)
Steven G. Hill (*Pro Hac Vice Forthcoming*)
Georgia Bar No. 354658
Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd., SE, Suite 1050
Atlanta, Georgia 30339-6406
Tel.: (770) 953-0995
Email: dludwig@hkw-law.com
Email: sgh@hkw-law.com

*Counsel for Plaintiff Crosslayer Communications LLC*